**UNITED STATES of America,**
Appellant,

v.

**VIEW CREST GARDEN APTS., INC., a**
Corporation, et al., Appellees.

No. 16229.

United States Court of Appeals
Ninth Circuit.
June 22, 1959.

See also 265 F.2d 205.

George Cochran Doub, Asst. Atty. Gen., Seymour Farber, Alan S. Rosenthal, William E. Mullin, Jr., Samuel D. Slade, Attorneys, Department of Justice, Washington, D. C., Charles P. Moriarty, U. S. Atty., Richard F. Broz, Asst. U. S. Atty., Seattle, Wash., for appellant.

Lycette, Diamond & Sylvester, Josef Diamond and Lyle S. Iversen, Seattle, Wash., for appellees.

Before POPE, ORR, and HAMLEY, Circuit Judges.

ORR, Circuit Judge.

Appellee, View Crest Garden Apts., Inc., borrowed money from the National Bank of Commerce of Seattle, hereafter Bank. A mortgage was executed by appellee as mortgagor to the Bank as Mortgagee. Mortgage insurance was agreed to by the Federal Housing Insurance Authority, hereafter FHA, pursuant to its duly constituted authority. The mortgage form used was a printed one formulated by the FHA and contained a provision to the effect that in the event of foreclosure a receiver was to be appointed in order to collect rents which were to be applied as additional payment on the debt. A number of notes, also on printed forms furnished by the FHA, were executed to secure each installment to be paid.

A default occurred, but was cured by a modification of the agreement between appellee and the FHA, the bank having previously assigned the mortgage to the Federal National Mortgage Association who in turn assigned it to FHA.

A second default occurred on March 15, 1958, whereupon the United States instituted this foreclosure action and in its complaint for foreclosure prayed for the appointment of a receiver to take over the assets and collect the rents.

A hearing was had on the application for the appointment of a receiver. The court denied the application on the ground that inasmuch as the state law

of the State of Washington applied, no sufficient showing had been made under the law of said state to warrant such an appointment.

■ No contention is made by the government that in the event Washington State law applies the trial court was in error in refusing the appointment. The contention is that it erred in applying state law rather than federal law as controlling. We take the view that the government is correct in its contention. In reaching our conclusion we have found that in this case as in others with which we have struggled the solution is not without difficulty. But we do find it to be clear that the *source* of the law governing the relations between the United States and the parties to the mortgage here involved is federal. Clearfield Trust Co. v. United States, 318 U.S. 363, 63 S. Ct. 573, 87 L.Ed. 838; United States v. Allegheny County, 322 U.S. 174, 64 S.Ct. 908, 88 L.Ed. 1209; United States v. Matthews, 9 Cir., 1957, 244 F.2d 626; McKnight v. United States, 9 Cir., 1958, 259 F.2d 540. Cf. Bank of America Nat. Trust & Sav. Ass'n v. Parnell, 352 U.S. 29, 77 S.Ct. 119, 1 L.Ed.2d 93. It is therefore equally clear that if the law of the State of Washington is to have any application in the foreclosure proceeding it is not because it applies of its own force, but because either the Congress, the FHA, or the Federal Court adopts the local rule to further federal policy. As it is made certain in the cases just cited, this action arises under federal law, and not as an action between persons of diverse citizenship, hence the rule of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 is inapplicable. Nevertheless state law is sometimes adopted to fulfil the federal policies involved. As the Supreme Court of the United States stated in Clearfield Trust, supra, "in our choice of the applicable federal rule we have occasionally selected state law." But not when "the desirability of a uniform federal rule is plain." 318 U.S. at page 367, 63 S.Ct. at page 575.

■ Appellee argues that the Congress has adopted state law as to the appointment of receivers by its reference to state law in defining mortgages. Section 1707 of 12 U.S.C.A. reads in part: "The term 'mortgage' means * * * and the term 'first mortgage' means such classes of first liens as are commonly given * * * under the laws of the State, in which the real estate is located * * *" The argument is that in adopting the state definition of "first mortgage," Congress intended to adopt *all* the incidents of the mortgage relation under state law including remedies on default and the appointment of receivers. That this is not the case is clear from reading section 1713 of the same Act which defines certain acts as being in default (part g) and sets out certain remedies that the FHA can pursue such as institution of foreclosure (part k) proceedings without reference to whether or not there is such a remedy for the default described in the State where the property is located. Moreover, there is no apparent reason for assuming that Congress in incorporating by reference certain duties under state law also meant to restrict the United States to the state remedies for breach of those duties—as will be discussed in connection with appellees' contention that because FHA uses different mortgage forms for different states, it discloses an intention to conform to local law in all respects.[1]

The separate forms for each state used by the FHA make reference to such things as the recording acts of the state for which the form is designed. A reasonable explanation of both this variation of forms from state to state and the Congressional reference to state law in defining first mortgages is that suggested by the Supreme Court of the United States in Clearfield Trust to the effect that where it is commercially con-

---

[1.] It is apparent that the FHA did not intend to adopt local law as to when a receiver may be appointed as the mortgage form contains a stipulation setting out when FHA would be entitled to a receiver.

venient to adopt state law as the federal rule, and when no federal policy would be impaired, local rules can be effectively utilized. Thus state recording acts interfere with no federal policy as there is no federal recording system for the type of mortgages here involved. It is commercially convenient to adopt existing state systems as it saves the expense of setting up a whole new federal recording system and it enables persons checking ownership interests in property to refer to one set of record books rather than two. Utilizing state definitions of first mortgage liens is convenient in that its terms are familiar to persons in the locale where the lien is created and who will see it on the record books; it interferes with no federal policy since the Act in adopting the state definition of first mortgages as the type required insures that the FHA will have the finest protection of its security interest—that there will be no superior mortgage under local law.

■ A different set of factors come into play when the planning stage and the working stages of the agreement have been terminated. After a default the sole situation presented is one of remedies. Commercial convenience in utilizing local forms and recording devices familiar to the community is no longer a significant factor. Now the federal policy to protect the treasury and to promote the security of federal investment which in turn promotes the prime purpose of the Act—to facilitate the building of homes by the use of federal credit —becomes predominant. Local rules limiting the effectiveness of the remedies available to the United States for breach of a federal duty can not be adopted.[2]

It is urged that to hold that federal law applies would result in great hardship to mortgagors who would thereby be deprived of all rights under state law such as the right of redemption. We do not think that such a conclusion necessarily follows. A court confronted with that question could determine it by weighing the federal interest against the particular local policy involved.[3] If the considerations weighed by the court suggest an adoption of local law, such as the local rule on redemption, that could be done. But if on the other hand necessity requires the fashioning of a federal rule, absent a declared federal rule on the subject the federal courts are authorized to and capable of fashioning one. The United States Supreme Court has suggested a starting point for developing federal decisional law in nondiversity cases by pointing to the rules developed by the federal courts in diversity cases before Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, it stated in Clearfield Trust the following:

> "While the federal law merchant developed for about a century under the regime of Swift v. Tyson, 16 Pet. 1, 10 L.Ed. 865, represented general commercial law rather than a choice of a federal rule designed to protect a federal right, it nevertheless stands as a convenient source of reference for fashioning federal rules applicable to these federal questions." 318 U.S. at page 367, 63 S. Ct. at page 575.

This question of the right of redemption is not presently before us. We mention it merely in answer to appellees' argument as to the havoc which would be wrought by our holding that state law does not apply in the aspect of the case before us.

The trial court having found that the showing made was insufficient to warrant the appointment of a receiver under state law and this court being of the opin-

---

2. This court in a very similar case involving veterans loans insured by the United States held that a local statute prohibiting deficiency judgments could not impair that remedy as far as the mortgage insured by the United States is involved. McKnight v. United States, 9 Cir., 1958, 259 F.2d 540.

3. Guiding considerations are discussed in Mishkin, The Variousness of "Federal Law"; Competence and Discretion in the Choice of National and State Rules for Decision, 105 U.Pa.L.Rev. 797 (1957).

**384**

ion that federal law controls, it is ordered that the case be remanded with instructions to the trial court to make a determination as a matter of federal law whether the facts warrant the appointment of a receiver.