**UNITED STATES of America**

**v.**

**John P. RILEY et al.**

**Civ. A. No. 15009.**

United States District Court,
W. D. Louisiana,
Lafayette Division.

April 12, 1972.

Donald E. Walter, U. S. Atty., and D. H. Perkins, Jr., Asst. U. S. Atty., Shreveport, La., for plaintiff.

William E. Logan, Jr., Lafayette, La., for defendants, John P. Riley and Kathryn J. Riley.

John W. Hutchison, Voorhies, Labbe, Fontenot, Leonard & McGlasson, Lafayette, La., for Ruby Prejean.

H. Purvis Carmouche, Jr., Mouton, Roy, Carmouche & Hailey, Lafayette, La., for Hub City Bank & Trust Co.

## MEMORANDUM OPINION

PUTNAM, District Judge.

The United States filed this suit as holder of a promissory note executed by the defendants on June 10, 1966, in favor of Hub City Bank and Trust Company of Lafayette, Louisiana (Hub City), secured by a chattel mortgage on certain property belonging to Aerial Sign Company. At the time of trial on August 27, 1971, the property had been sold and the balance due was $10,006.63, plus interest at the rate of seven per cent (7%) per annum until paid, the total accrued interest on that date being $3426.88. Interest continues to run at the rate of $1.57 per day.

The evidence shows that on April 11, 1966 a loan application was made in behalf of Aerial Sign Company, a commercial partnership domiciled in Lafayette, by defendant J. P. Riley, one of the partners, to the Small Business Administration (SBA), an agency of the United States, for a loan of $35,000.00, to be handled by Hub City. The application was approved and the loan authorized. The note in question was executed by J. P. Riley, his wife Kathryn J. Riley, Floyd J. Prejean and his wife, Ruby M. Prejean, who bound themselves individually and in solido for the debt, and are defendants in this suit.

Defendants have filed a third party party demand for damages against Hub City, alleging that it breached its contractual obligations to Aerial Sign Company when it did not disburse the full amount of the loan. It is not disputed that only $30,240.56 was actually disbursed. The remaining $4,750.44 has been credited against the note. In addition, defendant Ruby M. Prejean, has filed a cross-complaint against J. P. Riley for any amount she may be called upon to pay to the United States, predicated upon an assumption of indebtedness and agreement to hold her harmless from liability therefor when her husband's interest in Aerial was purchased by Riley on or about July 19, 1966. (See pretrial stipulation, paragraph 7F.)

In addition to the foregoing, we find the following facts to be established, viz:

1. Funds were to be disbursed by Hub City within four months of the date of the loan. Extensions for making disbursements were obtained from SBA to February 15, 1967. According to the

loan authorization the proceeds of the loan were allocated as follows:

(a) Approximately $11,000.00 for buildings, machinery and equipment.

(b) Approximately $18,354.00 for payment of debts.

(c) Balance solely for operating expenses of Borrower.

2. Monthly payments of $481.00 were made on the note by Hub City from August, 1966, through December, 1968, by debiting the account of Aerial Sign Company and forwarding the payments to SBA.

3. Defendants paid $12,932.37 against the loan. Subsequently, plaintiff received $2,460.00 from the proceeds of another sale of certain of the mortgaged chattels provoked by another creditor, Commercial Factoring Co. This concern held a mortgage on land upon which Aerial had located the buildings mortgaged as chattels to secure the note in suit. This foreclosure, Civil Docket No. 46748, Fifteenth Judicial District Court of Louisiana, in and for Lafayette Parish, brought about the sale of the land and buildings in globo, without appraisement. Plaintiff intervened in that suit, made a separate appraisal of the buildings, and the property was sold as a result of which the amount of the appraisal, $2,460.00, was paid on account of the note.

4. Plaintiff also received $9,600.00 from the sale of the remaining assets of Aerial, in bankruptcy, which was also credited to the note, leaving the balance due on funds which were actually disbursed by Hub City $10,006.63, plus accrued interest as above set forth.

5. Hub City extended credit to Aerial up to $15,000.00, secured by accounts receivable of the debtor corporation, out of which the bank made the monthly payments due to SBA on the note, and paid other indebtedness of the firm. Numerous discussions were had between defendant Riley and the Bank's president Mr. Byron Plauche, regarding the company's affairs, and Mr. Riley was fully aware of Hub City's actions. During the time when disbursements under the loan terminated in February, 1967, and the date of the last payment on the note in December, 1968, the Aerial account was frequently overdrawn and its affairs managed in a very loose manner. Mr. Plauche called this to Mr. Riley's attention by letter, and verbally. He expressed concern to the SBA in February, 1967, and requested that the loan be reviewed. He recommended to the SBA in April, 1967, that no further disbursements be made, and on April 27, that agency, through Mr. Troescher, agreed with him that the undisbursed portion of the loan, $4750.44, be cancelled. A total of $30,249.56 was actually disbursed by Hub City to or for the benefit of Aerial in accordance with the loan authorization.

6. The authorization to Hub City provided in part that:

"Prior to each disbursement on account of the Loan, Bank shall receive satisfactory evidence that there has been no unremedied adverse change since the date of the application, or since any of the preceding disbursements, in Borrower's financial condition, organization, operations, business prospects, fixed or other properties, personnel or any condition of Borrower sufficiently serious in the opinion of the Bank to warrant withholding such disbursement."

Mr. Riley and his partner, Floyd Prejean, were aware of and agreed to this and other provisions of the loan authorization, the loan guarantee and the mortgage itself, placing the responsibility for supervising the disbursement of the loan proceeds in Hub City and requiring the latter to exercise close supervision over the management of the affairs of the business for the protection of the loan, 90% of which was guaranteed by SBA.

7. Documentary evidence in the record reflects that although the loan application and all other papers executed by defendants stated that Aerial Sign Company was a partnership, and written articles were signed on June 10, 1966,

the date of the note, by Riley and Prejean, reciting that they had operated under a verbal agreement since April 1, 1965, these same two parties had formed a corporation known as Aerial Mfg. & Sign Co., Inc., on February 28, 1966, with Mr. Eugene Miller of Lafayette as a third stockholder and Secretary-Treasurer of the organization. The objects and purposes of the corporate entity were identical to the stated purpose of the partnership Aerial Sign Company, which applied for and obtained the loan. This was not disclosed to the bank or to SBA at the time of the loan application.

8. On July 19, 1966, the partnership was dissolved and Prejean's interest taken over by Riley. This change in business organization was not disclosed as required by the loan application and subsequent loan authorization. Moreover, Mr. Riley attempted to negotiate other loans without consulting Hub City, made withdrawals from the account in excess of the authorized sum of $6000.00 per annum, purchased two automobiles for which he attempted to pay by furnishing signs to his vendor, did not keep an accurate record of his expenditures and repeatedly issued checks overdrawing Aerial's balance. In general, the attempts made by Hub City to assist the business operations and exercise supervision over its management in the particulars set out in the Loan Agreement (Exhibit G-8, SBA form 153a(12-63), were ignored and thwarted by Mr. Riley.

### CONCLUSIONS.

The loan in question was a guaranteed loan by SBA under 15 U.S.C.A. § 636, as amended, and regulations issued pursuant thereto, 13 C.F.R., Chapter 1, particularly § 122.20 et seq., dealing with the administration of such loans and § 122.23, et seq., providing the liquidation policy therefor.

Under these facts, defendants contend that the plaintiff cannot recover on two grounds—first, that by intervening in the foreclosure proceedings instituted by Commercial Factoring Company, and participating in the proceeds of the sale in that suit, made without appraisement, the United States has forfeited its right to a deficiency judgment under Louisiana law, and, second, that because the entire $35,000.00 was not disbursed by Hub City, there was a failure of consideration and the entire loan agreement is rendered void *ab initio*.

■■ With regard to the first contention, it is settled in this state that under L.S.A.–C.C.P. Art. 2771, and L.S.A.–R.S. 13:4106, one who takes advantage of a judicial sale of mortgaged property on foreclosure without benefit of appraisement loses all rights to pursue his debtor by way of a deficiency judgment. The debt is satisfied in full. However, it is equally well settled that in cases arising under federal laws where a federal agency retains an interest in a loan made pursuant to a statutory assistance program, the case is controlled by federal, not state, law. In this instance, the loan was made pursuant to Section 2[7](a) of the Small Business Act, Title 15 U.S.C.A. § 636, et seq. The basis of our jurisdiction here is not diversity of citizenship, but 28 U.S.C.A. § 1345, and 15 U.S.C.A. § 634(b)(1). Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), does not apply. See and compare: United States v. Shimer, 367 U.S. 374, 81 S.Ct. 1554, 6 L.Ed.2d 908 (1961); United States v. View Crest Garden Apts., Inc. 268 F.2d 380, 381 (9 Cir. 1959), United States v. Stadium Apartments, Inc., 425 F.2d 358, (9 Cir. 1970); United States v. Phillips, 439 F.2d 1197 (5 Cir. 1971); United States v. Wells, 403 F.2d 596 (5 Cir. 1968); United States v. Thompson, 438 F.2d 254 (8 Cir. 1971); United States v. Merrick Sponsor Corp., 421 F.2d 1076 (2 Cir. 1970); United States v. Skipper Smith's Marina, Inc., et al., 283 F.Supp. 408 (S.D.Fla.1968); Belgard v. United States (W.D.La.1964), 232 F.Supp. 265.

■■ As is the case in loans made by the Veteran's Administration and the Federal Housing Administration, the declared purpose of the Small Business

Act, 15 U.S.C.A. § 631 et seq., is to preserve and expand full and free competition for the economic well being and security of the nation, by encouraging and developing the actual and potential capacity of small business. The purpose of the program is public in character and nationwide in scope. From the foregoing cases it is our conclusion that, as in other loan programs, the overriding federal interest requires that the remedy for enforcement of the loans so made should not depend upon variances found in the laws of the several states, particularly with respect to the procurement of deficiency judgments against the defaulting debtor or the guarantors of the obligation sued upon. A different conclusion is required where the security interest sought to be enforced was not confected in accordance with state law, as in Bumb v. United States, 276 F.2d 729 (9 Cir. 1960), and, more recently, in United States v. Yazell, 334 F.2d 454 (5 Cir. 1964), affirmed 382 U. S. 341, 86 S.Ct. 500, 15 L.Ed.2d 404 (1965), where the incapacity of a married woman to bind her separate property without prior removal of the disability of coverture by court decree was held to prevent pursuit of her separate estate for the balance due upon default.

As to the second defense, failure of consideration, we find that this position is untenable. It is our conclusion that the repeated acts of Mr. Riley in violation of the loan agreement in this case were sufficient cause for Hub City and the SBA to order disbursement of the funds remaining with the bank stopped. It was Aerial, acting through Mr. Riley, that breached the agreement, not Hub City. Even assuming that the termination of disbursements under this loan was not justified, which we do solely for the purposes of argument, there was at best only a partial failure of consideration, and plaintiff, as holder of the promissory note in question, is entitled to recover the balance due. See: Duvio v. Thomas, 95 So.2d 687 (La.App.1957); National American Bank of New Orleans v. Washington, 223 So.2d 502 (La. App.1969).

For the same reasons, defendant's third party complaints against Hub City must fail.

Judgment is rendered in favor of the United States as prayed for against all defendants, and rejecting the third party complaints filed by J. P. Riley and Kathryn Riley, and by Ruby M. Prejean, against Hub City Bank and Trust Company.

Judgment will also be rendered in favor of Mrs. Ruby M. Prejean against J. P. Riley and Mrs. Kathryn Riley on her third party complaint against these parties as provided in paragraph 7F of the Pretrial Stipulation filed herein.