Harold D. WHITEHEAD, Carole M. Underwood, James C. Jensen, Jr., and Gregory M. Smith, Paul D. Brady, individually and on behalf of all others in the State of Washington similarly situated, Plaintiffs,

v.

Thomas TURNAGE, or his successor, Administrator of the Veterans Administration; The United States of America; the Veterans Administration; and Richard F. Murphy, Director, Seattle Regional Office, the Veterans Administration, Defendants.

No. C87–779(C)WD.

United States District Court,
W.D. Washington.

July 21, 1988.

David A. Leen, Leen & Moore, Seattle, Wash., for plaintiffs.

Diane E. Tebelius, Asst. U.S. Atty., Seattle, Wash., for defendants.

MEMORANDUM DECISION ON MOTIONS TO AMEND COMPLAINT AND FOR SUMMARY JUDGMENT

DWYER, District Judge.

I. NATURE OF THE CASE

In *United States v. Vallejo*, 660 F.Supp. 535 (W.D.Wash.1987), this court (Coughenour, J.) held that the State of Washington's

antideficiency judgment statute applied to a nonjudicial foreclosure by the Veterans Administration ("VA") of a deed of trust securing a veteran's loan guaranteed by the VA. The court held that the VA had elected its remedies and was subject to the Washington statutory provision precluding the recovery of a deficiency from the borrower if a nonjudicial foreclosure is used. The government did not appeal the *Vallejo* decision.

The present case was filed on June 4, 1987, and has been certified as a class action under Fed.R.Civ.P. 23. The class is composed of

all Veterans or widows of Veterans or other individuals eligible for home loan guarantees or insurance provided pursuant to Title 38, United States Code, Chapter 37, against whom a claim has been or will be made by the United States, pursuant to 38 C.F.R. 36.4323(e) or pursuant to a written indemnity agreement, which claim has been or will be generated because of a claim paid by the United States to a lender who submitted such claim to the United States because of a non-judicial foreclosure conducted in the State of Washington and in accordance with Chapter 61.24 Revised Code of Washington.

The plaintiffs seek declaratory, injunctive, and monetary relief for themselves and all members of the class.

## II. THE PENDING MOTIONS

### A. For Leave to Amend

Plaintiffs have moved for leave to amend the complaint to add an allegation of jurisdiction under 38 U.S.C. § 1820(a) and 28 U.S.C. § 1331. The motion is granted; the amended complaint that has been lodged will be filed; and defendants' answer is deemed the answer to the complaint as amended.

### B. To Dismiss Certain Parties

Defendants have moved to dismiss several parties on grounds of sovereign immunity. This question has been resolved by a stipulation made in open court that the only necessary parties defendant are Thomas Turnage, or his successor, Administrator of the Veterans Administration ("VA"), and, as to injunctive relief only, the United States. Accordingly, the complaint is hereby dismissed as to the other defendants originally named.

### C. For Summary Judgment

Plaintiffs have moved for summary judgment awarding them a declaratory judgment and permanent injunctive relief. Defendants have filed a cross-motion for summary judgment of dismissal. Having read and considered the briefs and other materials filed in support of or opposition to the motions, and having heard oral argument of counsel, the court now finds and rules as follows:

1. *United States v. Vallejo.* Most of the arguments presented by defendants are to the effect that *Vallejo* was wrongly decided. The opinion in that case, however, convincingly describes why the Washington antideficiency statute, RCW 61.24.100, must be applied in foreclosure actions on loans guaranteed by the VA. The VA regulations at issue contemplate that foreclosure actions will be governed by state law. *Vallejo*, 660 F.Supp. at 537. Application of the Washington foreclosure law does not frustrate the VA program objectives, whereas the government's position would deprive the veteran debtor of rights he or she retains in private transactions in Washington. *Id.* at 537–39. The government's right to indemnification as guarantor goes no farther than the borrower's obligation to the lender. *Id.* at 539–40. Neither the VA regulation codified at 38 C.F.R. § 36.4323(e), nor *United States v. Shimer*, 367 U.S. 374, 81 S.Ct. 1554, 6 L.Ed.2d 908 (1961), both relied upon by defendants, suggests otherwise. *Id.* at 539–40.

At oral argument in the present case, counsel for the VA was asked whether anything in the transactional documents would have apprised a veteran that he or she was contracting to give the VA the right to obtain a deficiency judgment in a nonjudicial foreclosure even though the

lender would have no such right. In answer to this, counsel cited only the following language contained in a certification presented to the veteran for signature:

> As a GI home loan borrower you will be legally obligated to make the mortgage payments called for by your mortgage loan contract. The fact that you dispose of your property after the loan has been made WILL NOT RELIEVE YOU OF LIABILITY FOR MAKING THESE PAYMENTS.
>
> Some GI home buyers have the mistaken impression that if they sell their homes when they move to another locality, or dispose of it for any other reason, they are no longer liable for the mortgage payments and that liability for these payments is solely that of the new owners. Even though the new owner may agree in writing to assume liability for your mortgage payments, this assumption agreement will not relieve you from liability to the holder of the note which you signed when you obtained the loan to buy the property. Also, unless you are able to sell the property to a credit-worthy obligor who is acceptable to the VA and who will assume the payment of your obligation to the lender and the Veterans Administration, you will not be relieved from liability to repay any guaranty claim which the VA may be required to pay your lender on account of default in your loan payments.
>
> The amount of any such claim payment will be a debt owed by you to the Federal Government. This debt will be the object of established collection procedures. Payment of the loan in full ordinarily is the way in which continuing liability on a mortgage note is ended. Therefore, if you expect to move from the area in which you are now considering the purchase of a home and should you be unable to sell such home with the purchaser obtaining new financing to pay off your loan, you should understand that you may continue to be liable to the holder of your mortgage and to the Veterans Administration.

*See, e.g.,* Government's Memorandum of Law (Clerk's File No. 58), Ex. D (VA Form 26–1820), ¶ 35.

The quoted language fails to suggest that the veteran could be held liable to the VA for more than he or she would be called upon to pay the lender. In fact, the language treats the obligations to the lender and the VA as equivalent when it refers, in successive sentences, to "liability to the holder of the note" and "liability to repay any guaranty claim which the VA may be required to pay." The statement that "[t]he amount of any such claim payment will be a debt owed by you to the Federal Government" does not imply that the debt would be on any different footing than the debt owed to the lender for back payments. The form tells the veteran that the "debt will be the object of established collection procedures"—which, to one versed in Washington law, would mean that no deficiency could be collected if the remedy of nonjudicial foreclosure were used. The language relied upon by the VA cannot be read to mean that the VA's position following a nonjudicial foreclosure would be any different from that of the lender or any private guarantor.

■ 2. *Whether the Vallejo Rule Applies to Claims Arising Before it Was Decided.* A three-part test is used to determine if a ruling should be applied retroactively:

(1) whether the decision announces a new rule of law;

(2) whether retroactive enforcement would advance the purpose of the underlying statute; and

(3) whether retroactive enforcement would yield equitable results.

*Gibson v. United States,* 781 F.2d 1334, 1339 (9th Cir.1986), *cert. denied,* 479 U.S. 1054, 107 S.Ct. 928, 93 L.Ed.2d 979 (1987). For the reasons stated below, the court finds that the *Vallejo* rule should be applied to claims arising before the case was decided.

A. *Not a New Rule of Law.* The rule announced in *Vallejo* was foreshadowed by several decisions in analogous areas of the

law. In 1966, the Supreme Court held that the Texas coverture law applied to limit the ability of the Small Business Administration ("SBA") to collect on a defaulted loan. *United States v. Yazell*, 382 U.S. 341, 86 S.Ct. 500, 15 L.Ed.2d 404 (1966). In 1975, the Ninth Circuit applied a Nevada antideficiency law and Arizona redemption rights in the face of SBA foreclosures. *United States v. MacKenzie*, 510 F.2d 39 (9th Cir. 1975) (en banc). In *United States v. Stewart*, 523 F.2d 1070 (9th Cir.1975), the court held that the California antideficiency statute barred a VA deficiency claim when the agency foreclosed on a direct loan. Two years later, the Supreme Court made clear that state law could be adopted as the federal common law rule of decision governing federal agencies, as long as application of the state law would not frustrate specific objectives of the federal program. *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979). Loans from the SBA and Farmers Home Administration ("FmHA") were at issue in *Kimbell Foods*. The Ninth Circuit subsequently applied the *Kimbell Foods* analysis in holding that a debtor was entitled to Washington redemption rights on an FmHA loan, despite having signed a standard form waiver of those rights. *United States v. Ellis*, 714 F.2d 953 (9th Cir.1983).

In some cases courts have declined to adopt a state law because it conflicted with a recognized policy or regulation of the federal program. *See, e.g., United States v. Gish*, 559 F.2d 572, 575 (9th Cir.1977), *cert. denied*, 435 U.S. 996, 98 S.Ct. 1648, 56 L.Ed.2d 85 (1978); *United States v. Haddon Haciendas Co.*, 541 F.2d 777, 782–84 (9th Cir.1976); *United States v. Stadium Apartments, Inc.*, 425 F.2d 358, 364–67 (9th Cir.), *cert. denied*, 400 U.S. 926, 91 S.Ct. 187, 27 L.Ed.2d 185 (1970). There is no such conflict here.

Thus, the authorities for more than two decades have shown that a state's antideficiency law will apply to federal agencies as long as there is no recognized policy of the federal program with which the state law conflicts. The VA regulations here provide that foreclosure actions are governed by state law. *See* 38 C.F.R. §§ 36.4319, 36.-4320. Courts have applied state foreclosure laws to loans made by the SBA, the FmHA, and the VA. The VA could reasonably have foreseen the rule announced in *Vallejo.*

B. *Whether the Purpose of the Underlying Statute Would be Advanced.* The federal purposes in the VA loan program are

> to enable veterans to obtain loans and to obtain them with the least risk of loss upon foreclosure, to both veteran and the Veterans' Administration as guarantor of the veteran's indebtedness.

*United States v. Shimer*, 367 U.S. 374, 383, 81 S.Ct. 1554, 1560, 6 L.Ed.2d 908 (1961). As recognized in *Vallejo*, adoption of the government's position would increase the risk of loss of veteran debtors in Washington and, as a result, would deter veterans from seeking VA-guaranteed loans. *Vallejo*, 660 F.Supp at 539.

The VA undeniably has an interest in recouping its outlays, but every creditor has the same interest. *Yazell*, 382 U.S. at 348, 86 S.Ct. at 504–505. The government's interests in this respect are not absolute. *Id.* at 348–49, 86 S.Ct. at 504–05. Retroactive application of the *Vallejo* rule advances the purpose of the VA home loan guarantee program by restoring the balance of creditor and debtor rights on which applicants for VA loans should be able to rely.

C. *Equitable Results.* The government argues that retroactive application would be inequitable because if it had known that nonjudicial foreclosures prohibited the collection of deficiency judgments, it would have required lenders to foreclose judicially. But it is not at all clear that the VA would in fact have done that in view of the practical difficulties involved. And there are several reasons why the VA will not lose a significant benefit.

Any direct benefits to the agency from using judicial foreclosures would be minimal. Such a proceeding costs more than a nonjudicial foreclosure and the property sold is subject to a one-year redemption period, making it less attactive to buyers

and often resulting in a lower selling price. Lenders participating in the VA loan program might be less willing to participate under a mandatory judicial foreclosure rule.

The VA has only recently begun to try to collect from defaulting veterans. With no active collection policy until recently, it is unlikely that prior knowledge of the *Vallejo* decision would have resulted in a greater number of deficiencies collected.

Moreover, if the VA had used judicial foreclosures in the past, the debtors would have had substantial due process rights which they do not have in nonjudicial foreclosures. In practice, debtors' rights inherent in a judicial foreclosure have been sacrificed at the same time that the VA has been collecting deficiency judgments. The detriment to the VA in refunding collected deficiencies and forgiving uncollected ones is more than offset by the rectification of an injustice to the veterans. Retroactive application of *Vallejo* restores the balance struck by the Washington Deed of Trust Act, an equitable result.

■ 3. *Statute of Limitations.* Plaintiffs argue that their claims did not accrue until their rights were enunciated in *Vallejo*. Defendants contend that if plaintiffs and the class members are awarded any relief as to past events it must be limited to claims arising within six years prior to the date the present case was filed. Defendants rely upon 28 U.S.C. § 2401(a), which provides:

(a) Except as provided by the Contract Disputes Act of 1978, every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues. The action of any person under legal disability or beyond the seas at the time the claim accrues may be commenced within three years after the disability ceases.

The position of defendants is correct on this issue. The language in 28 U.S.C. § 2401(a) is unequivocal. It applies equally to actions in equity and at law. *Christiensen v. United States*, 755 F.2d 705, 707 (9th Cir.1985), *cert. denied*, 476 U.S. 1181, 106

S.Ct. 2914, 91 L.Ed.2d 543 (1986). Plaintiffs' and class members' claims accrued when deficiency claims were asserted following nonjudicial foreclosure. Relief should be limited to claims arising within six years prior to the date this case was filed.

■ 4. *Attorney Fees.* While most of the issues in this case have been resolved against defendants on summary judgment, the court finds that attorney fees should not be awarded to plaintiffs under the Equal Access to Justice Act. Within the meaning of that statute, the position of defendants was "substantially justified." 28 U.S.C. § 2412(d)(1)(A). Counsel for plaintiffs and the class have leave to apply for attorney fees on other grounds.

5. *Declaratory, Injunctive, and Monetary Relief.* It follows from the foregoing that plaintiffs and the class members are entitled to relief. Neither injunctive nor monetary relief will have undue practical consequences. Since the *Vallejo* holding the VA apparently has not sought to correct deficiencies in nonjudicial foreclosures. Before *Vallejo*, both in the State of Washington and nationally, it appears that only a small fraction of claimed deficiencies were actually collected from veterans whose properties were lost in foreclosure.

■ Plaintiffs and the class members are entitled to:

(a) A declaratory judgment that the rights of the class members are governed by the federal common law which incorporates and makes operative the Washington Deed of Trust Act, RCW 61.24 *et seq.*, including the antideficiency provisions of RCW 61.24.100; and

(b) A permanent injunction making appropriate provisions for modification of the VA's practices and for reimbursement of plaintiffs and class members from whom the VA has collected deficiencies in violation of the *Vallejo* rule.

An order implementing that portion of this memorandum decision that rules on the motions for summary judgment will be entered hereafter. Defendants are direct-

ed to file by August 5, 1988, their comments, not to exceed ten pages in length, on the form of order lodged herein by plaintiffs on January 7, 1988. Plaintiffs may file a reply thereto, not to exceed ten pages in length, on August 12, 1988.